IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAMON ODIN LAGOS, et al., )
        Plaintiffs )
)
      v. )    C.A. No. 09-214 Erie
)
FRANCISCO J. QUINTANA, et al., )
        Defendants. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I    RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 38], be granted.

**II    REPORT**

    **A.    Relevant Procedural History**

This *pro se* civil rights action was initiated on August 19, 2009, by nine (9) named inmate Plaintiffs and "80 other [unnamed] inmates," all of whom were then incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"). Five of the named Plaintiffs, as well as the "80 other [unnamed] inmates," were dismissed from this case for failure to prosecute, pursuant to Memorandum Order of District Judge Sean J. McLaughlin, dated December 2, 2009. [ECF No. 11]. The remaining four named Plaintiffs are Ramon Odin Lagos ("Lagos"); Ricardo Cruzagosto ("Cruzagosto"); Guadalupe De Anda ("De Anda"); and Pedro Horton ("Horton"). Named as Defendants in the complaint are Francisco Quintana, former Warden at FCI-McKean ("Quintana"); FCI-McKean; and various unnamed staff members at FCI-McKean identified as "Executives."

Plaintiffs allege that Defendants violated their rights under the first, fourth, eighth and

fourteenth amendments to the United States Constitution by subjecting them to prison conditions they found objectionable. In particular, Plaintiffs complain about the alleged inadequacy of FCI-McKean's health and dental care; the housing of ten inmates in a cell with one toilet and no air conditioning; flooding in housing units without sewer drains; dirty showers; inmates smoking marijuana and cigarettes made from chewing tobacco that was spit on the floor by staff members; unsanitary conditions in the kitchen; and racial discrimination. Although Plaintiffs' claims are asserted under 42 U.S.C. § 1983, they will be more appropriately construed as claims pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), because they consist of constitutional claims against federal employees and/or agencies.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 38] arguing, *inter alia*, that the complaint should be dismissed because Plaintiffs have failed to exhaust their administrative remedies under the Prison Litigation Reform Act ("PLRA"). In response, Plaintiffs have filed a memorandum of law in opposition to Defendants' motion [ECF No. 42]. This matter is now ripe for consideration.

**B.** **Standards of Review**
    **1.** **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009)

(specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district**

3

> **court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d

4

458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 3. *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the

5

court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Exhaustion of Administrative Remedies

Defendants argue that Plaintiffs have failed to exhaust their administrative remedies in accordance with the requirements of the PLRA, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id.[1] (emphasis added).

---

[1] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

**1.     Exhaustion Standard**

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[3]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally

---

[2]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that ϲ1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3]

There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

7

defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to Federal Inmates

To determine whether Plaintiffs have exhausted the administrative remedies required by the Bureau of Prisons' grievance system, an understanding of the administrative process available to federal prisoners is essential. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an

appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### **3.** **Analysis**

Defendants assert that Plaintiffs have failed to properly exhaust their administrative remedies with regard to all of their claims. This assertion is supported by the Declaration of Vanessa Herbin-Smith, a Supervisory Paralegal for the BOP's Northeast Regional Office, who certifies the following:

> 5. On or about August 31, 2010, in connection with the above-captioned litigation, I accessed the computerized indexes and hard copies of the administrative remedies filed by inmates Lagos-Murillo, Cruzagosto, De Anda and Horton, to determine whether they had attempted to exhaust the highest level of administrative appeal on any issue raised in this civil action.
>
> 6. Inmate Lagos-Murillo's Administrative Remedy records reflect that to date he has filed 19 Administrative Remedy Requests and/or Appeals during his incarceration. Of the 19 Administrative Remedy filings, eight (8) concerned issues that arose prior to his designation to FCI McKean. Of the 11 Administrative Remedy filings concerning issues that arose at FCI McKean, six (6) were rejected for his failure to follow proper filing procedures. Of the five (5) filings that were accepted for a response, three (3) filings concerned the denial of placement in a residential reentry center (RRC)(Case Number 580553), which is an issue that has not been raised in this civil action. In the two (2) remaining administrative remedy filings (Case Number 575565), he complained that Health Services staff at FCI McKean provided inadequate medical care and delayed the delivery of pain medication to him. Inmate Lagos-Murillo's Administrative Remedy Record indicates that although he exhausted both the institutional and regional office levels of review, he never filed a Central Office Appeal to fully

exhaust his available Administrative Remedies on this issue. The Regional Office's Response in Case Number 575565-R1, was May 7, 2010. Thus, under 28 C.F.R. § 542.15(a), his Central Office Appeal was due in the Office of the General Counsel by approximately June 7, 2010. Because inmate Lagos-Murillo failed to file his Central Office Appeal in Case Number 575565, and over 30 days have elapsed since May 7, 2010, he is now time-barred from exhausting his available Administrative Remedies on the issue raised in Case Number 575565.

7. Inmate Cruzagosto's Administrative Remedy record reflects that he has filed nine (9) Administrative Remedy Requests and/or Appeals during his federal incarceration. Of his nine (9) Administrative Remedy filings, only one (1) was filed after he was designated to FCI McKean (Case Number 546244-F1). Inmate Cruzagosto's Administrative Remedy record reflects that in Case Number 546244-F1, he requested an oral argument tape. .... The issue raised by inmate Cruzagosto in Case Number 546244 was not raised in this civil action.

8. Inmate De Anda's Administrative Remedy Record reflects that he has filed 20 Administrative Remedy Requests and/or Appeals during his federal incarceration. Of his 20 filings, 15 were filed before he was designated to FCI McKean, and five (5) raised issues concerning events which alleged[ly] occurred at FCI McKean. Of the five Administrative Remedy filings complaining of incidents/conditions at FCI McKean, two were rejected. Of the three Administrative Remedies that were successfully filed, two were complaints that he was "indigent" and was forced by the Health Services department to purchase pain medication in the commissary. He also complained the medications he needed were not available for purchase through the commissary. Although inmate De Anda exhausted this issue through the institutional and regional office levels of review, he has not filed a Central Office Appeal to fully exhaust his available administrative Remedies on this issue. The Region's Response to Administrative Remedy Case Number 545987-R1 as dated August 28, 2009. Thus, the deadline for his Central Office Administrative Remedy Appeal was September 28, 2009. However, to date, he has not filed a Central Office Appeal in Case Number 545987. Because over 30 days have elapsed since August 28, 2009, he is now time-barred from filing a Central Office Appeal in Case Number 545987. The only other administrative Remedy submission inmate De Anda filed regarding conditions at FCI McKean, was an appeal of disciplinary action.... This issue ... has not been raised in this civil action.

9. Inmate Horton's Administrative Remedy records indicate that during his federal incarceration, he filed one Administrative

>>Remedy Request, and that filing was made on November 26, 2008, prior to his incarceration at FCI McKean. Therefore, inmate Horton has not exhausted his available Administrative Remedies for any issue raised in this civil action.
>
> 10. Following a search and review of the administrative remedy indices of inmates Lagos-Murillo, Cruzagosto, De Anda, and Horton, I determined that none of them have exhausted their available administrative remedies with respect to any issue raised in this civil action.

(ECF No. 39-1, Declaration of Vanessa Herbin-Smith, at ¶¶ 5-10).

In opposition to Defendants' exhaustion challenge, Plaintiffs cite the Third Circuit case of Muhammad v. Carlson, 739 F.2d 122 (3d Cir. 1984) for the proposition that a federal prisoner is not required to exhaust administrative remedies before initiating a Bivens action seeking only monetary damages. (ECF No. 42, Plaintiffs' memorandum of law, at p. 12). However, this holding was superseded by Congress's enactment of the PLRA in 1995, which makes exhaustion mandatory for all actions "brought with respect to prison conditions under section 1983..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility...." 42 U.S.C. § 1997e(a). Thus, Plaintiffs' argument in this regard is unavailing.[4]

Plaintiffs have failed to present any additional arguments or documentary evidence sufficient to overcome Ms. Herbin-Smith's Declaration that they failed to fully exhaust their administrative remedies with regard to any of the claims raised in this case. As a result, summary judgment should be entered in favor of Defendants and against Plaintiffs based upon Plaintiffs' failure to exhaust their administrative remedies.

---

[4] Plaintiffs also argue that "the exhaustion of remedies doctrine is generally 'not' applicable to actions alleging a violation of constitutional[ly] protected rights," citing the Ninth Circuit Court's decision in Right v. Simi Valley Unified School District, 696 F.2d 644 (9th Cir. 1983). However, this decision also predates the PLRA's enactment.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated: March 28, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge